# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### *Southern Division*

| | | |
|---|---|---|
| **R. ALEXANDER ACOSTA,** | * | |
| **SECRETARY OF LABOR,** | | |
| **U.S. DEPARTMENT OF LABOR,** | | |
| | | |
| **Plaintiff,** | * | |
| | | |
| **v.** | * | **Case No.: PWG-17-2587** |
| | | |
| **ROMERO LANDSCAPING, INC.,** *et al.*, | * | |
| | | |
| **Defendants.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

R. Alexander Acosta, while still serving as Secretary of Labor for the U.S. Department of Labor (the "Department")[1] filed suit against Jose Romero and Romero Landscaping, Inc. (individually "Mr. Romero" and "Romero Landscaping"; together, "Romero"), alleging that they violated various provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 ("FLSA" or "Act"), and seeking to recover back wages and liquidated damages and to enjoin them from committing further violations.  Compl., ECF No. 1. Pending is the Department's Motion for Summary Judgment, in which it argues that the undisputed facts establish Romero's liability for failing to pay overtime wages and failing to keep sufficient and accurate records of their Employees' hours and wages, as the FLSA requires. ECF No. 21.[2]

---

[1] Acosta since has resigned, and Patrick Pizzella became Acting Secretary of Labor on July 20, 2019.  *See* U.S. Department of Labor, https://www.dol.gov/osec.  The Clerk's Office shall amend the docket accordingly.

[2] The parties fully briefed the Motion.  ECF Nos. 21-1, 27, 28.  A hearing is not necessary.  *See* Loc. R. 105.6. While the Department alleged in its Complaint that Romero failed to pay

The undisputed facts on the record before me demonstrate that Romero violated the FLSA's recordkeeping and overtime compensation provisions. *See* 29 U.S.C. §§ 207(a)(1), (e), (h), 211(c); 29 C.F.R. § 516.2(a). Therefore, summary judgment is granted in the Department's favor as to liability for these violations. While the undisputed facts establish that injunctive relief is warranted and that Defendants must pay back wages and liquidated damages for the overtime hours the Employees worked without compensation, a genuine dispute exists on the record before me as to the number of hours the Employees worked. Accordingly, the Department's Motion is denied as to the amount of damages, and I will schedule a bench trial to resolve the dispute.

## Evidence before the Court

Discovery closed on June 21, 2018, ECF Nos. 13, 14, and on October 5, 2018, the Department filed the pending Motion for Summary Judgment. The Department based its Motion on Romero's written discovery responses; declarations from eight of the Employees, who asserted that they consistently worked well over 40 hours each week without receiving time and a half compensation for the overtime hours; the scant payroll records that Romero produced in discovery, showing payments by check for no more than 40 hours each week; Mr. Romero's deposition; and Romero's apparent failure to keep any other wage and hour records. *See* Pl.'s Mem. 5–6; ECF Nos. 21-5 – 21-14, 21-7, 22.

In response, Defendants filed their Opposition on December 10, 2018, along with affidavits from Romero and two employees, ECF Nos. 25-2, 25-3, 25-5, and seventy-seven pages of timesheets (the "Timesheets"), ECF No. 25-7, that Mr. Romero claimed to have discovered on

---

minimum wages, when it filed its summary judgment motion after the close of discovery, it sought to recover damages only for Romero's alleged violations of the overtime wages provision of the FLSA.

October 5, 2018 (the date the Department filed its Motion) and passed to his attorney on December 3, 2018, *see* Romero Aff. ¶¶ 9, 10, ECF No. 25-5. In its Reply, the Department argues that the Timesheets, which Romero never produced in discovery, should be excluded under Rule 37(c)(1).[3] Pl.'s Reply 8–10. Romero did not seek leave to file a surreply to address this argument. *See* Docket. Defendants did, however, assert in their Opposition that the delay was not intentional or a form of foul play, insisting that they would have produced the Timesheets sooner if they had located them sooner, as the Timesheets would have provided a defense to the Department's allegation that they kept inadequate records. Defs.' Opp'n 15 n.12.

In discovery, the Department requested "[a]ll documents showing the hours worked, during the relevant time period, by employees, including but not limited to payroll records, employee lists, employee schedules, time cards and/or work schedules." Pl.'s First Req. for Prod. of Docs., No. 5, ECF No. 28-1. Defendants did not produce the Timesheets, which they rely on now in support of their arguments that they kept payroll records and paid the Employees adequate wages for all hours worked.

"If a party fails to provide information . . . , the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). Though district courts have "broad discretion" to decide whether a failure to disclose was substantially justified or harmless, the Fourth Circuit has held courts "should" consider five factors:

---

[3] The Department arguably did not have the opportunity to challenge Defendants' responses to written discovery, in which they said that they did not have timesheets for the Employees, Romero Aff. ¶ 9; Defs.' Ans. to Interrog. No. 9, ECF No. 21-6; Defs.' Resp. to Req. for Admissions Nos. 12, 13, ECF No. 21-5, as incomplete or evasive, to seek sanctions, or to compel a discovery response pursuant to Fed. R. Civ. P. 37(a)(3)(B)(iv), (4), (d)(1)(A)(ii), given that it did not have a basis for believing that Romero had additional records.

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence.

*Sanchez Carrera v. EMD Sales, Inc.*, No. JKB-17-3066, 2019 WL 3946469, at *4 (D. Md. Aug. 21, 2019) (quoting *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003)). The party that fails to disclose the evidence bears the burden of "establish[ing] that nondisclosure was substantially justified or harmless." *Id.* (quoting *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014)).

Regarding the first factor, Defendants' reliance on the Timesheets clearly was surprising, in light of their failure to produce them in response to the Department's March 29, 2018 request for production of documents; their admission that they did not "maintain an account of hours worked for the employees listed in Schedule A" or the Employees' "overtime earnings" until after the Department's investigation concluded; and their interrogatory answer stating that they did not begin tracking work hours until after the investigation concluded. Defs.' Resp. to Req. for Admissions Nos. 12, 13, ECF No. 21-5; Defs.' Ans. to Interrog. No. 9, ECF No. 21-6. But, as for the second factor, the Department could cure the surprise before trial by seeking to reopen discovery, which it has not done. Certainly, they can no longer cure the surprise for purposes of the pending motion, because they did not ask to stay resolution of the motion while they sought additional discovery. There is not harm in this surprise, however, as consideration of the Timesheets, which cover only a part of the period at issue, does not affect the outcome of the motion. As discussed further below, with or without the Timesheets, no genuine dispute exists as to Defendants' failure to keep adequate records or to pay the Employees time-and-a-half for all of the overtime hours they worked. And, with or without the Timesheets, a genuine dispute exists

regarding the amount of overtime wages Defendants now must pay. Thus, this evidence's importance is minimal.

Generally, when a party "fail[s] to disclose . . . information prior to the close of discovery and the filing of summary judgment motions," as Romero did here, this failure "argues strongly in favor of exclusion." *Sanchez Carrera*, 2019 WL 3946469, at *4. Yet when, as here, the Court has not scheduled trial yet, the factor concerning disruption of trial "only leans slightly in favor of exclusion," even though reopening discovery would prolong resolution of the case. *Id.* For example, in *MCI Communications Services, Inc. v. American Infrastructure-MD, Inc.*, the Court concluded that this factor was "split between the two parties" because "the trial date ha[d] not been set," but the disclosure "[came] in the midst of competing cross-motions for partial summary judgment. No. GLR-11-3767, 2013 WL 4086401, at *9 (D. Md. Aug. 12, 2013).

Defendants provide very little explanation for the belated disclosure of the Timesheets. But, what they do say is significant: They note that producing the Timesheets was in Romero's best interest when faced with allegations of inadequate record keeping. *See* Pl.'s Opp'n 15 n.12. Thus, the delayed production does not appear to have been willful. Weighing these factors, it is clear that, despite the surprise, it is curable and admission of the Timesheets is harmless because the Department could seek additional discovery and trial has not been scheduled and, more significantly, the Timesheets do not impact the Court's analysis of the Department's claims. Therefore, I will not exclude the exhibit. *See S. States Rack & Fixture*, 318 F.3d at 597; *Sanchez Carrera*, 2019 WL 3946469, at *4.

## Standard of Review

In reviewing a motion for summary judgment, the Court considers the facts in the light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. *Ricci v.*

*DeStefano*, 557 U.S. 557, 585–86 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009). Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id*.

## Background

Romero Landscaping, Inc. "is a residential landscaping company"; Jose Romero owns 100% of the company. Pl.'s Mem. 4; Defs.' Opp'n 6, ¶ 1.[4] It is undisputed that the company is subject to the provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 ("FLSA" or "Act"), and that the employees listed in Schedule A of Plaintiff's Complaint ("Employees") are covered under the Act. Pl.'s Mem. 4, 9; Defs.' Opp'n 6, ¶ 1. It also is undisputed that Mr. Romero

---

[4] Because this Memorandum Opinion addresses the Motion for Summary Judgment that the Department filed against Defendants, I consider the facts in the light most favorable to Defendants as the non-moving parties. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

qualifies as an "employer" under the Act, *see* Pl.'s Mem. 5, ¶ 5; Defs.' Opp'n 6, ¶ 1; Pl.'s Reply 2, and therefore he can be held jointly and severally liable for his company's violations of the Act. *See* 29 U.S.C. § 203(d).

The Department investigated Romero's payroll practices from March 7, 2014 to March 7, 2017. Defs.' Opp'n 2; Pl.'s Reply 14. The parties agree that the earliest damages the Department could recover, however, would be from June 8, 2014, and only if the three-year statute of limitations for willful violations applies. Defs.' Opp'n 3; Pl.'s Reply 14. It is undisputed that, during that period, the Employees were paid regular wages for all hours worked, even when they worked overtime. Romero Aff. ¶ 12; B. Batz Decl. ¶¶ 3–4, ECF No. 21-8; C. Batz Decl. ¶¶ 4–5, ECF No. 21-9; V. Batz Decl. ¶¶ 3–4, ECF No. 21-13; Lopez Decl. ¶¶ 3–4, ECF No. 21-10; Ramirez Decl. ¶¶ 3, 5, ECF No. 21-12; Rosales Decl. ¶¶ 4–5, ECF No. 21-14; L. Batz Decl. ¶¶ 3–4, ECF No. 21-11.

Their paystubs for the period at issue reflect the payments of regular wages for up to forty hours per week but no hours worked or wages paid beyond those forty hours. Paystubs, ECF Nos. 21-7, 25-8, 25-9. The Department submitted evidence that the Employees regularly worked overtime, typically working between fifty and sixty-five hours per week, but they were not paid one and one-half times their wages for overtime hours. B. Batz Decl. ¶¶ 4–6; C. Batz Decl. ¶¶ 5–7; V. Batz Decl. ¶¶ 4–6; Lopez Decl. ¶¶ 4, 6–7; Ramirez Decl. ¶¶ 5–7; Rosales Decl. ¶¶ 4–7; L. Batz Decl. ¶¶ 4–5. Defendants agree that the Employees worked overtime, but they submitted evidence to show that it was not as frequent as the Employees claim and that the Employees' extra compensation for the overtime hours satisfies the FLSA requirements. Romero Aff. ¶ 3, 5, 9, 11; E. Cruz Aff. ¶¶ 3, 5, ECF No. 25-2; W. Cruz Aff. ¶¶ 3, 5, ECF No. 25-3; Timesheets.

<u>**Discussion**</u>

The Department seeks summary judgment on its claim that Romero's payroll records do not meet the requirements of the FLSA, as well as its claim that Romero failed to pay the Employees time-and-a-half for overtime hours worked.  Pl.'s Mem. 2–3.

*Recordkeeping Requirements*

Pursuant to the FLSA, a covered employer's payroll records must contain, *inter alia*, the following information for each employee covered by the FLSA:

> (7) Hours worked each workday and *total hours worked each workweek* (for purposes of this section, a "workday" is any fixed period of 24 consecutive hours and a "workweek" is any fixed and regularly recurring period of 7 consecutive workdays),
>
> (8) *Total daily or weekly straight-time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation,*
>
> (9) *Total premium pay for overtime hours*. This amount excludes the straight-time earnings for overtime hours recorded under paragraph (a)(8) of this section,
>
> . . .
>
> (11) Total wages paid each pay period,
>
> (12) Date of payment and the pay period covered by payment.

29 C.F.R. § 516.2(a) (emphasis added); *see* 29 U.S.C. § 211(c).  It is unlawful for an employer to fail to comply with these requirements.  29 U.S.C. § 215(a)(2).

The record before me includes Defendant's interrogatory responses, in which they stated that they did not begin "tracking work hours" until after the period at issue concluded, Defs.' Ans. to Interrog. No. 9, and their responses to the Department's request for admissions, in which Defendants "admit[ted] failing to maintain an account of hours worked for the employees listed in Schedule A" or the Employees' "overtime earnings" until after the Department's investigation concluded, Defs.' Resp. to Req. for Admissions Nos. 12, 13.  Yet the record also includes various paystubs, ECF Nos. 21-7, 25-8, 25-9, company checks made payable to employees, ECF No. 21-

16, Timesheets, ECF No. 25-7, and a Labor Audit Report, ECF No. 26, for the time period during which the Department investigated Romero, March 7, 2014 through March 7, 2017, *see* Defs.' Opp'n 2; Pl.'s Reply 14.[5]

Even considering these documents collectively as Romero's payroll records in the light most favorable to Romero, they fail to meet the FLSA recordkeeping requirements. Notably, most paystubs provided compensation for Employees who worked exactly forty hours, while some provided bonus pay at an unstated rate and others provided compensation at an unstated rate for an unstated purpose; none identified the compensation as overtime wages or listed a premium pay rate. Yet, the Timesheets show that the Employees often worked in excess of forty hours per week. *See* Timesheets 1-27, 29-48, 50-58, 60-74, 76-77. Additionally, Defendants concede that the Employees regularly worked in excess of forty hours per weeks, although they insist the Employees worked fewer hours than they claimed. Defs.' Opp'n 4 ("As reflected on their timesheets, the Schedule A employees regularly worked more than forty (40) hours per week; however, as revealed on their timesheets, their work hours were not uniform and there were many weeks during the relevant time period where little to no overtime was worked."). Thus, despite the undisputed fact that the Employees often worked more than forty hours per week, the paystubs do not reflect overtime pay, and the Timesheets do not provide separate totals for regular and overtime compensation as the FLSA requires, see 29 C.F.R. § 516.2(a)(8)-(9); they simply provide the total hours worked and the total amount of compensation. *See* Timesheets.

Moreover, the Timesheets do not provide a complete record; as Romero acknowledges: "A total of seventy-seven (77) timesheets were found – 23 for 2014 (77% of the 30 payrolls), 35 for

---

[5] The parties agree that, if a three-year statute of limitations applies, then the period of time for which Romero could have to pay back wages begins June 8, 2014 and concludes March 7, 2017. Defs.' Opp'n 3; Pl.'s Reply 14.

2015 (81% of the 43 payrolls), and 19 for 2016 (44% of the 43 payrolls). . . . [S]ome timesheets are missing . . . ." Defs.' Opp'n 4. Additionally, of the seventy-seven Timesheets, only fifty-three are dated,[6] and only fifty-one of those fall within the period at issue. *See* Timesheets 6-23, 26-28, 30-32, 34-37, 40-48, 51-54, 60-65, 70-73; Romero Aff. ¶ 5 ("[S]ome of the timesheets are not dated."). And, the four company checks do nothing to fill in the gaps, as they do not identify a pay period, a pay rate, or even state that they were issued as wages, rather than loans, bonuses, or gifts. *See* Romero Aff. ¶ 13 ("I regularly advanced or loaned the Schedule A employees large sums of money, much of which has never been paid back."). Indeed, Defendants do not assert that they complied with all of the FLSA record-keeping requirements but rather that they "largely satisfied" the requirements. *See* Defs.' Opp'n 11. Thus, the undisputed facts before me demonstrate that, in violation of the FLSA's record keeping requirements, Romero failed to keep payroll records that reflect the Employees' total hours worked each week and the amount of overtime compensation paid. *See* 29 U.S.C. § 211(c); 29 C.F.R. § 516.2(a)(7)–(12).

*Overtime Compensation Requirements*

Under the FLSA, an employer must pay any covered employee working more than forty hours per week "compensation for his employment in excess of [forty] hours . . . at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). It is unlawful for an employer to fail to pay the required overtime compensation. 29 U.S.C. § 215(a)(5).

Significantly, additional compensation paid beyond the regular rate does not automatically qualify as overtime compensation. *See* 29 U.S.C. § 207(h); *Acosta v. Luxury Floors, Inc.*, No. 18-

---

[6] Romero asserts that the "correct year" (but not exact pay period) can be determined "by comparing the rosters of employees on the payroll." Romero Aff. ¶ 5.

1489 WMW/ECW, 2018 WL 7350478, at *3 (D. Minn. Dec. 7, 2018) ("As a general rule, a credit to overtime is not available under the FLSA when the amount was excluded from the regular rate." (citing 29 U.S.C. § 207(h)(1))), *report and recommendation adopted,* No. 18-1489 (WMW/ECW), 2019 WL 652419 (D. Minn. Feb. 15, 2019). Indeed, except for three enumerated categories of compensation paid, which "shall be creditable toward overtime compensation," any other "sums excluded from the regular rate pursuant to subsection (e) [which identifies compensation that can be credited toward overtime pay] shall not be creditable toward . . . overtime compensation required . . . ." 29 U.S.C. § 207(h); *see* 29 C.F.R. § 778.201(c) ("No other types of remuneration for employment may be so credited."); *see also Burnett v. Walker Cty. Comm'n*, No. 13-1506-HNJ, 2018 WL 2931222, at *2 (N.D. Ala. May 16, 2018) ("The plain meaning of these statutory and regulatory provisions manifest clearly: extra compensation *provided by premium rates satisfying § 207(e)* 'are regarded as overtime premiums' that 'may be credited toward overtime compensation.'" (emphasis added) (quoting 29 C.F.R. § 778.201 and discussing 29 U.S.C. § 207(e), (h)(2))).

The three categories of compensation that can be credited toward overtime compensation are:

> **(5)** extra compensation *provided by a premium rate* paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) or in excess of the employee's normal working hours or regular working hours, as the case may be;
>
> **(6)** extra compensation *provided by a premium rate* paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days;
>
> **(7)** extra compensation *provided by a premium rate* paid to the employee, in pursuance of an applicable employment contract or collective-bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours)

or workweek . . . , where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek; or

29 U.S.C. § 207(e). Significantly, "[t]he overtime rate, like the regular rate, is a rate per hour," and extra compensation only qualifies as an overtime premium if it is "paid pursuant to a premium rate." 29 C.F.R. § 778.308(a); *see Smiley v. E.I. Dupont De Nemours & Co.*, 839 F.3d 325, 332 (3d Cir. 2016) ("[T]he statute only provides for an offset of an employer's overtime liability using other compensation excluded from the regular rate pursuant to sections 207(e)(5)-(7) and paid to an employee at a premium rate."), *cert. denied sub nom. E.I. Du Pont De Nemours & Co. v. Smiley*, 138 S. Ct. 2563 (2018).

Defendants admitted that they "did not compensate the [Employees] at rates not less than one and one-half times the regular rates" for overtime work. Defs.' Resp. to Req. for Admissions No. 19. Likewise, in response to the Department's Interrogatories, Defendants stated that "during the relevant time period, employees . . . were compensated in accordance with their *hourly* rate," and they did not begin paying an overtime rate until after the Department's investigation concluded. Defs.' Ans. to Interrog. Nos. 9, 10 (emphasis added). Notwithstanding these responses, Defendants now insist that "employees working overtime often received compensation in excess of one and one-half of their regular hourly rate." Defs.' Opp'n 12.

Even if that were accurate, the undisputed evidence shows that the extra compensation paid to the Employees was not *at a premium rate* as the FLSA requires, and Defendants have not identified any evidence that the Employees were paid at a premium rate for the overtime hours they worked. *See* Romero Aff. ¶ 12 ("I was not aware of the requirements imposed by the FLSA during the relevant time period and accordingly, we did not provide typical overtime compensation to the Schedule A employees when they worked in excess of forty (40) hours per week, but instead

paid them at their regular established hourly rate for all hours worked – i.e. 'straight time.' However, … we often overpaid the Schedule A employees for their overtime hours, sometimes at a rate which exceeded one and one-half times the employees' regular hourly rate."); Paystubs (listing only regular hourly rate and wages paid for forty hours worked per week); Timesheets (not identifying either a regular or premium rate paid); Labor Audit Report (listing checks paid to employees but not identifying purpose of checks). Rather, Defendants stated in an interrogatory response that "there were no formal work rules or policies concerning hours worked or overtime" until approximately March 2017, when "Defendant Romero Landscaping implemented an overtime policy, began tracking hours and paying overtime to employees for hours over forty worked in any given workweek."  Defs.' Ans. to Interrog. No. 10.

Moreover, it is undisputed that Defendants did not always pay the Employees at least one and one-half times their regular pay rate for overtime hours worked.  *See* Romero Aff. ¶ 12 (stating that Defendants "*often* overpaid the Schedule A employees for their overtime hours, *sometimes* at a rate which exceeded one and one-half times the employees' regular hourly rate" (emphases added)).  Indeed, in their effort to establish that they paid the Employees more than required, rather than less, Defendants actually show that there was at least one instance in which they failed to pay overtime wages at the rate that the FLSA requires. *See* Defs.' Opp'n 13.  Defendants contend:

> [A]ccording to his timesheet, Cristobal Batz worked a total of 49 hours during the pay period ending March 26, 2015, which includes nine (9) hours of overtime. Exhibit 6. As reflected on his paycheck, Mr. Batz's regular hourly rate was $10.50 per hour and he received $420.00 for forty (40) hours of work during this pay period. *Id*. According to the Wage Transcription and Computation Sheet, Mr. Batz received a total of $557.00 during this pay period, an additional $137.00 that again exceeds the $47.25 in overtime to which he was entitled (9 x the half-time premium of $5.25). *See* Plaintiff's Opposition, Exhibit 15.

*Id.*  If Mr. Batz's regular pay rate was $10.50 per hour, then he should have received at least $15.75 for each hour worked above 40 hours (1.5 x $10.50).  Thus, if he worked forty-nine hours in a

workweek, he should have received $420 (40 x $10.50) for the first forty hours worked and $141.75 (9 x $15.75) for the additional nine hours worked, for a total of $561.75. Or, applying Romero's "unconventional" approach to calculating overtime compensation, Mr. Batz should have received $10.50 per hour for forty-nine hours ($514.50), plus $5.25 per hour for the nine overtime hours ($47.25), for a total of $561.75. He received only $557.00, an insufficient sum. *See* 29 U.S.C. § 207(a)(1). Thus, Defendants are liable for violating the FLSA by failing to pay all overtime compensation due. *See* 29 U.S.C. § 207(a)(1).

*Damages*

The FLSA provides for damages for violations of § 207 in an amount equal to the employees' unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." *See* 29 U.S.C. § 216(b). Defendants, as the employer, "bear[] the ultimate responsibility for ensuring that employee time sheets are an accurate record of all hours worked by the employees." *Butler v. DirectSAT USA, LLC*, 47 F. Supp. 3d 300, 309 (D. Md. 2014) (citing 29 U.S.C. § 211(c)). The Department insists that the employee declarations it submitted, asserting that the Employees typically worked an average of sixty-two hours each week, in December worked an average of fifty hours each week, and never received overtime compensation at a premium rate, should be determinative of the amount of back wages for which Defendants are liable. Pl.'s Reply 3, 11-12. As the Department sees it, Defendants cannot refute this evidence because they failed to produce during discovery the Timesheets they now rely on, and the Timesheets are inconsistent with the Employees' declarations that the Department submitted. *Id.*

Certainly, the Department can prove the Employees' overtime hours by proving that the Employees had "in fact performed work for which [they were] improperly compensated" and "producing sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *See Butler*, 47 F. Supp. 3d at 309 (quoting *Anderson v. Mt. Clemens Pottery*

*Co.*, 328 U.S. 680, 687–88 (1946) (emphasis added)). If the employer does not produce evidence to the contrary, "the court may then award damages to the employee, even though the result be only approximate." *Id.* (quoting *Anderson*, 328 U.S. at 687–88); *see also Pforr v. Food Lion Inc.*, 851 F.2d 106, 108 (4th Cir. 1988) (The FLSA "does not mandate that a plaintiff prove each hour of overtime work with unerring accuracy or certainty."). Thus, "'[a] prima facie case can be made through an employee's testimony giving his recollection of hours worked ....'" *Hurd v. NDL, Inc.*, No. CCB-11-1944, 2012 WL 642425, at *4 (D. Md. Feb. 27, 2012) (quoting *Donovan v. Kentwood Dev. Co.,* 549 F. Supp. 480, 485 (D. Md. 1982)); *see Schultz v. All-Fund, Inc.*, No. JFM-06-2016, 2007 WL 2333049, at *4 (D. Md. Aug. 13, 2007) (plaintiffs' affidavits sufficient for summary judgment in their favor); *Marroquin v. Canales,* 505 F. Supp. 2d 283, 297 (D. Md. 2007) ("[E]mployees have the initial burden of proving they worked a certain numbers of hours, which can be proved through an employee's testimony giving his recollection of hours worked." (internal quotations omitted)).

The Employees' testimony is not, however, sacrosanct. Significantly, the employer may rebut the employees' testimony, and like any other testimony, it is subject to a credibility determination. *See Clancy v. Skyline Grill, LLC*, No. ELH-12-1598, 2012 WL 5409733, at *6 (D. Md. Nov. 5, 2012) (stating that plaintiff's approximated testimony may form basis for damages award "'*if* considered credible by the trier of fact'" and "*if* the employer does not successfully rebut the employee's statement"), *report and recommendation adopted*, No. ELH-12-1598, 2013 WL 625344 (D. Md. Feb. 19, 2013) (quoting *Lopez v. Lawns 'R' Us*, No. DKC 07-2979, 2008 WL 2227353, at *3 (D. Md. May 23, 2008)) (emphasis added); *Chao v. Self Pride, Inc*., No. RDB-03-3409, 2006 WL 469954, at *& (D. Md. Jan. 17, 2006) (finding affidavits sufficient for summary judgment in plaintiff's favor where they were unrebutted). Credibility is a matter for the factfinder. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the

weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

Here, six of the Employees provided declarations that they worked typically between sixty and sixty-five hours per week, B. Batz Decl. ¶ 5; C. Batz Decl. ¶ 6; V. Batz Decl. ¶ 5; Lopez Decl. ¶ 6; Ramirez Decl. ¶ 6; Rosales Decl. ¶ 6, and one stated that he typically worked fifty to sixty hours per week, L. Batz Decl. ¶ 5. They all stated that they worked fewer hours in December, when five worked an average of fifty to fifty-five hours each week, C. Batz Decl. ¶ 7; V. Batz Decl. ¶ 6; L. Batz Decl. ¶ 5; Ramirez Decl. ¶ 7; Rosales Decl. ¶ 7, and two worked about fifty hours each week, on average, Lopez Decl. ¶ 7; B. Batz Decl. ¶ 6. And, Romero conceded during discovery that Defendants did not maintain records of the Employees' overtime hours during the period in question. Defs.' Ans. to Interrog. Nos. 9, 10; Defs.' Resp. to Req. for Admissions Nos. 12, 13.

Yet neither these discovery responses nor Defendants' failure to produce the Timesheets during discovery is tantamount to a concession that the Employees' representations of the hours they worked are accurate. Rather, Defendants have the opportunity on summary judgment to support their position with affidavits, *see* Fed. R. Civ. P. 56(c)(1)(A), and they have done so. Affidavits from Romero and employees Wilbur Cruz and Edwin Cruz state that that the other Employees worked fewer hours than they claimed. Romero asserts that the Employees' claimed hours worked "are categorically false," Romero Aff. ¶ 3, and "greatly exaggerated," *id.* ¶ 9, as the "actual work hours of the Schedule A employees" appear on the Timesheets, *id.* ¶¶ 5, 11. *See* E. Cruz Aff. ¶¶ 3, 5; W. Cruz Aff. ¶¶ 3, 5. According to Romero, "employees regularly worked more than forty (40) hours per week" but "there were many weeks during the relevant period where little

to no overtime was worked." Romero Aff. ¶ 11. While the Department characterizes Romero's affidavit as "self-serving," Defs.' Reply 6, and Wilbur Cruz's and Edwin Cruz's affidavits as deficient and unreliable, *id.* at 13-14, it does not seek to exclude any of them.

At trial, the Department may be able to use Romero's discovery responses to impeach the credibility of his affidavit, if admissible, or any equivalent testimony that Romero may offer. Or, Romero may be able to prove at trial that some of the extra compensation was paid at a premium rate and therefore can be credited toward the overtime payments due. In *Boutell v. Craftmaster Painting, LLC*, the Western District of Wisconsin held that the employer was

> entitled to offset overtime owed in any given week so long as it [could] prove that it already paid some overtime premiums for hours worked in excess of 40 in that week. Specifically, [the] defendant [was] entitled under 29 U.S.C. § 207(e)(5) to recalculate the overtime owed for each work week and pay the difference between what was paid in overtime premiums already and what is determined to be owed.

No. 17-317-BBC, 2018 WL 6519065, at *3 (W.D. Wis. Dec. 11, 2018). The court reasoned that "[u]nder the FLSA, 29 U.S.C. § 207(h)(2), an employer may credit certain overtime payments already made to employees against overtime payments owed to the employees," such as pursuant to 29 U.S.C. § 207(e)(5) when the employer pays "'extra compensation [at] a premium rate'" for overtime hours. *Id.* (quoting 29 U.S.C. § 207(e)(5)). Thus, considering the evidence in the light most favorable to Defendants, the non-movants, a genuine dispute exists as to the number of hours the Employees worked. Therefore, I will deny summary judgment as to the amount of back wages owed. *See* 29 U.S.C. § 207; *Gionfriddo*, 769 F. Supp. 2d at 889; Fed. R. Civ. P. 56(a).

### Statute of Limitations

When an employer willfully violates the FLSA, the statute of limitations, which otherwise would be two years, becomes three years. 29 U.S.C. § 255(a); *see Sanchez Carrera v. EMD Sales, Inc.*, No. JKB-17-3066, 2019 WL 3946469, at *15 (D. Md. Aug. 21, 2019). An employer acted

willfully it if "'knew or showed reckless disregard for the matter of whether its conduct' violated the Act." *Sanchez Carrera*, 2019 WL 3946469, at *15 (quoting *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 375 (4th Cir. 2011) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988))). This typically is a question of fact, and the employee has the burden of proof of willfulness. *Id.* (quoting *Mountaire Farms*, 650 F.3d at 375); *see Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 130 (4th Cir. 2015).

> An employer recklessly disregards the Act's requirements "if the employer should have inquired further into whether its conduct was in compliance with the Act, and failed to make adequate further inquiry." 29 C.F.R. § 578.3(c)(3). A "good-faith but incorrect assumption that a pay plan complied with the FLSA in all respects" is not a willful violation. *Mould v. NJG Food Serv. Inc.*, 37 F. Supp. 3d 762, 772 (D. Md. 2014) (quoting *Richland Shoe*, 486 U.S. at 135). Mere negligence or unreasonableness does not establish willfulness without evidence of recklessness. *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 358 (4th Cir. 2011) (citing *Richland Shoe*, 486 U.S. at 135); *Richland Shoe*, 486 U.S. at 135 n.13. Instead, a party demonstrates willfulness by "choosing to remain ignorant of legal requirements or by learning of those requirements and disobeying them." *Chao v. Self Pride, Inc.*, 232 F. App'x 280, 287 (4th Cir. 2007) (unpublished table decision).

*Sanchez Carrera*, 2019 WL 3946469, at *15. For example, in *Aguilar v. ALCOA Concrete & Masonry, Inc.*, the employee alleged that his employer required him to work overtime and was aware of his overtime hours, yet "still 'failed to properly compensate him for it,' instead paying him a standard lump sum, regardless of his actual hours worked." No. TDC-15-0683, 2015 WL 6756044, at *2 (D. Md. Nov. 4, 2015). This Court concluded that "[t]hese allegations, taken as true, establish that Defendants knew that Aguilar was working overtime and that they were not compensating him for that overtime, and thus permit the reasonable inference that Defendants were either actively or recklessly disregarding the requirements of the FLSA." *Id.*

Likewise, here, even taking the facts in the light most favorable to Defendants, Romero failed to pay a premium rate of at least one and one-half times the regular rate for overtime hours worked, despite knowing that the Employees were working overtime, and he did not make any

inquiries to determine whether the law required any level of overtime compensation. Defs.' Resp. to Req. for Admissions No. 18. Additionally, insofar as Defendants paid some overtime compensation, it is undisputed that they did so by separate check and without noting the overtime hours on paystubs. Romero Aff. ¶ 6; B. Batz Decl. ¶ 3; C. Batz Decl. ¶ 4; V. Batz Decl. ¶ 3; Lopez Decl. ¶ 3; Ramirez Decl. ¶ 3; Rosales Decl. ¶ 5; L. Batz Decl. ¶ 3; Paystubs. Indeed, Defendants admitted that Romero Landscaping's approach to pay was "unconventional," Defs.' Opp'n 11, with the Employees receiving regular wages for all hours worked and no additional compensation on their payroll checks, and then, in a separate check, receiving additional compensation for the hours worked above forty, Romero Aff. ¶ 6. Notably, in contrast to the paystubs for the period at issue, which did not include a line for overtime, the later payroll records did. *See* Paystubs. The absence of a factual statement in a business record under circumstances where it would be reasonable to expect it to be included is itself proof that the statement was not made. *See* Fed. R. Evid. 803(7). Thus, the undisputed facts demonstrate that Romero acted recklessly, if not willfully, in disregarding the FLSA's overtime pay requirements, and therefore a three-year statute of limitations applies. *See* 29 U.S.C. § 255(a); *Sanchez Carrera*, 2019 WL 3946469, at *15.

*Liquidated Damages*

An employer that is liable for unpaid wages also is liable for "an additional equal amount as liquidated damages," 29 U.S.C. § 216(b), unless "'the employer shows to the satisfaction of the court that the act or omission giving rise to [the violation] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation' of [the] FLSA," in which case "the court [may] exercise its discretion to deny liquidated damages." *Acosta v. Mezcal, Inc.*, No. JKB-17-0931, 2019 WL 2550660, at *10 (D. Md. June 20, 2019) (quoting *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997); citing 29 U.S.C. § 260). These liquidated damages "are

'the norm,'" and the employer bears the "plain and substantial burden" of "show[ing] good faith and reasonable grounds for believing pay practices to be FLSA-compliant." *Id.* (quoting *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 357 (4th Cir. 1994)); *see also Mountaire Farms, Inc.*, 650 F.3d at 375. This is not the same standard that applies for willfulness determinations, and the opposite party bears the burden, but "the same evidence supporting the finding that Defendants' failure to pay overtime . . . was willful is relevant to whether those violations were made in good faith or upon reasonable grounds." *Mezcal*, 2019 WL 2550660, at *10. Specifically, there is no genuine dispute as to the facts that Defendants knew the Employees were working overtime, did not list their overtime hours on their paystubs, and paid them by separate checks. *See* Romero Aff. ¶¶ 6, 11, 12; Paystubs. Defendants have not shown any basis for believing that these practices complied with the FLSA requirements. Rather, they admitted that they were unaware of the FLSA requirements and did not make any efforts to learn what was required of an employer whose employees worked in excess of forty hours per week. Defs.' Resp. to Req. for Admissions No. 18; Romero Aff. ¶ 12. On the record before me, a reasonable factfinder could not find that Defendants met their burden of establishing that they acted in good faith when they failed to pay the Employees all the overtime compensation due under the FLSA. *See Mezcal*, 2019 WL 2550660, at *10. Consequently, they are liable for liquidated damages. *See id.*; 29 U.S.C. § 216(b).

### *Injunctive Relief*

The Court, in its discretion, may grant injunctive relief "for cause shown, to restrain violations" of both the recordkeeping and overtime compensation provisions of the FLSA. *See* 29 U.S.C. § 217; *see also Mezcal*, 2019 WL 2550660, at *11 (noting that injunctive relieve is available for violations of "the FLSA's minimum wage and overtime provisions"); *Acosta v. Vera's White*

*Sands Beach Club, LLC*, No. 16-782-PX, 2019 WL 1767147, at *6 (D. Md. Apr. 22, 2019) ("If an employer fails to comply with § 211(c)'s recordkeeping requirements, the Secretary may seek injunctive relief to include restraining future violations of recordkeeping requirements.") (citing 29 U.S.C. § 217; *Chao v. Self Pride, Inc.*, No. RDB 03-3409, 2006 WL 469954, at *11 (D. Md. Jan. 17, 2006)).  To determine whether to grant injunctive relief, the Court "look[s] at many factors[,] . . . including the employer's previous conduct, its current conduct, and the reliability of its promises of future compliance." *Mezcal*, 2019 WL 2550660, at *11 (quoting *Metzler v. IBP, Inc.*, 127 F.3d 959, 963 (10th Cir. 1997); citing *Chao v. Va. Dep't of Transp.*, 157 F. Supp. 2d 681, 690 (E.D. Va. 2011) (noting similar tests applied by five other federal appeals courts), *rev'd in part on other grounds*, 291 F.3d 276 (4th Cir. 2002)). In doing so, the Court "must give 'substantial weight to the fact that the [Department] seeks to vindicate a public, and not a private, right.'" *Id.* (quoting *Martin v. Funtime, Inc.*, 963 F.2d 110, 113 (6th Cir. 1992)).  Notably, "[p]resent compliance alone is not dispositive against an injunction." *Id.*  Indeed, when the Department shows that the employer violated these FLSA provisions, "the district court should ordinarily grant injunctive relief, even if the employer is in present compliance." *Marshall v. Van Matre*, 634 F.2d 1115, 1117 (8th Cir. 1980) (quoted in *Mezcal*).

Here, the more recent paystubs show both an hourly rate and a premium rate for overtime, the hours the Employees worked, and the pay they received.  Beyond this present compliance, however, Romero has not provided any assurance of compliance going forward, in light of the fact that Romero failed to show that the violations were in good faith, and the Department established that the violations were willful.  These circumstances militate in favor of an injunction.  *See Mezcal*, 2019 WL 2550660, at *11 (noting that willfulness "is a relevant consideration"); *see also Marshall*, 634 F.2d at 1117.  Moreover, "the injunction would require nothing more than compliance with Defendants' pre-existing legal obligations," and therefore "it imposes no hardship

and is consistent with the public interest." *See Mezcal*, 2019 WL 2550660, at *11. Accordingly, I will grant the Department's request for injunctive relief to ensure Romero's compliance with the FLSA recordkeeping and overtime compensation requirements. *See id.*

## Conclusion

In sum, Defendants are jointly and severally liable for willfully violating the recordkeeping and overtime compensation provisions of the FLSA, and they have not shown that their violations were in good faith. Therefore, a three-year statute of limitations applies, and the Department is entitled to back wages and liquidated damages for the period of June 8, 2014 to March 7, 2017, in amounts to be determined at trial. Further, I will grant injunctive relief to ensure Romero's compliance with the FLSA recordkeeping and overtime compensation requirements. Accordingly, the Department's Motion for Summary Judgment, ECF No. 21, IS GRANTED IN PART and DENIED IN PART.

A separate order will issue.


Date: <u>September 17, 2019</u>             <u>      /S/          </u>
                                                         Paul W. Grimm
                                                         United States District Judge